

Moseley House
1001 Grove Avenue
Box 842549
Richmond, VA
23284-2549

**SENSITIVE & PRIVATE**

November 16, 2018

RE: EAS Inquiry – Case #20181019

Dear Professor Tapia,

Thank you for participating in the inquiry by Equity and Access Services (EAS) initiated by the Dean of VCUarts. This letter serves as the EAS written report of the inquiry and administrative review, pursuant to Section 6 ("Administrative Review") of VCU's Preventing and Responding to Discrimination Policy ("Policy"), as discussed at our meeting on November 14.

The subject of the EAS inquiry was potential discrimination by you against Professor ▮▮▮ in the Department of Painting and Printmaking (PAPR)/School of the Arts (SOTA) on October 25, 2018. Specifically, it was reported that you contacted the building Security Officer about Professor ▮▮▮ presence in a PAPR work room and that you did so based on Professor ▮▮▮ race (African-American) and/or color (Black). Professor ▮▮▮ and you ("parties") as well as the Security Officer and the PAPR Department Chair ("witnesses") participated in the EAS inquiry. Findings of Fact prepared by the EAS investigator, along with exhibits such as photographs of the incident location, are attached to this letter and will be referenced throughout. Please note these are the same Findings of Fact provided during our meeting.

<u>Policy Information</u>

The Policy prohibits discrimination based on protected identity, including race and/or color, in VCU's educational, employment, social and residential programs. Discrimination includes harassment and other abusive behavior, whether verbal or physical that is based on protected identity.

Harassing conduct may take many forms, including verbal acts and name-calling, graphic and written statements which may include use of cell phones or the internet, physical conduct or other conduct that may be physically threatening, harmful, or humiliating. Harassment creates a hostile environment when the conduct is sufficiently severe, pervasive or persistent as to interfere with or limit an individual's ability to participate in or benefit from the university's educational, employment, social or residential programs. When such harassment is based on a protected identity such as race or color, it violates the Policy.

To determine whether a hostile environment exists, EAS considers the totality of the circumstances from both an objective and subjective perspective and examines the context, nature, scope, frequency, duration, and location of incidents, as well as the identity, number, and relationships of the persons involved. Harassment must consist of more than casual, isolated incidents to constitute a hostile environment. The Policy notes that "[t]reatment that does not constitute unlawful discrimination still may be inappropriate and prohibited by other university policies."

In an administrative review under the Policy, EAS considers all known information including the nature and the severity of the allegations, whether the allegations are amenable to resolution through other channels, such as Human Resources or management, the history of prior complaints against the same individuals, department and/or area, the expressed wishes (if known) of the affected individual(s) and any other pertinent information.

Results of EAS Inquiry and Administrative Review under the Policy

Based on the attached Findings of Fact, the summarized undisputed factual evidence is that:

*On the morning of October 25, 2018, following a brief encounter with an individual in a PAPR multi-purpose room (room 313), Professor Tapia asked the building's Security Officer who already was on the third floor assisting with another matter, to check on the individual. The individual, ▓▓▓▓▓▓▓, is a visiting adjunct professor who identifies as an African-American/Black woman. Professor Tapia and Professor ▓▓▓▓ did not know one another. Professor ▓▓▓▓ was present in the room to work on her laptop and to eat breakfast prior to her studio visits. The room is secured by a code and is available only to faculty and graduate students. The Security Officer asked Professor ▓▓▓▓ to identify herself, and Professor ▓▓▓▓ provided VCU identification.*

The interactions between Professor ▓▓▓▓ and you also between the Security Officer and you, including timing and room lighting, were in dispute. The EAS investigator resolved these factual disputes and inconsistencies in favor of Professor ▓▓▓▓ and the Security Officer and found that:

*Fact #9: Tapia and ▓▓▓▓ made eye contact, and ▓▓▓▓ greeted Tapia.*

*Fact #11: The overhead lights in Room 313 were off, but the room was well-lit, not dark.*

*Fact #17: Tapia approached [the Security Officer] and requested that she go to Room 313. He asked her to determine whether there was a student inside as he asserted students were not permitted to use the room.*

*Fact #22: The interaction between Tapia and ▓▓▓▓ took place shortly before 8:30 a.m., and [the Security Officer] went to Room 313 less than ten minutes later.*

See the attached Findings of Fact for the investigator's explanation of the resolution of these factual disputes and for the full set of the Findings of Fact.

The Findings of Fact, particularly when viewed in the light most favorable to Professor ▓▓▓▓ demonstrate that your initiation of the security check was not related to the printing press search and/or Professor ▓▓▓▓ failure to respond to a knock on the door and instead demonstrate that it was based on your assumption that Professor ▓▓▓▓ was not authorized to be in the room. This assumption was not based on anything Professor ▓▓▓▓ was doing (or not doing). Her activities

2

(eating breakfast and working on her laptop) were entirely appropriate and not out of the ordinary. Further, your statements about "Robert De Niro and pipe bombs" when discussing the incident with the Chair indicate that you perceived the situation to be potentially dangerous, despite the fact that you did not observe any actions or conditions that reasonably could be characterized as potentially dangerous. Even if you had assumed that Professor ███ was an undergraduate student (as you communicated to the Security Officer but denied during the inquiry), the mere presence of an undergraduate student in the room would not reasonably lead to concern about pipe bombs or other violent acts.

What this evidence demonstrates is that you initiated the security check based on your assumption that Professor ███ may not have been authorized to be in the room and your assumption was based on your lack of familiarity with Professor ███ and her appearance (as a student, at least as communicated to the Security Officer). Your account attempts to minimize the significance of Professor ███ appearance in your decision to initiate the security check, through your timeline and other details provided by you, which are contravened by the evidence.

What this evidence does not demonstrate is that you initiated the security check based on Professor ███ race and/or color. You did not overtly do or say anything that demonstrated that his decision to contact security was due to Professor ███ protected identities. The inquiry did not stop there, however. During the inquiry, EAS asked about any prior complaints against you which may indicate hostility toward a protected group, searched its records and also contacted all of the other university offices likely to have received such complaints (SOTA, Office of the Provost, Human Resources, Integrity and Compliance Office). The Department Chair and you denied any prior complaints, and no such records were located by EAS or any of the other contacted university offices. SOTA also reviewed student course evaluations for any concerns raised about discriminatory treatment by you, and no such concerns have been identified.

Additionally, due to social media external to the university about the incident, EAS and SOTA both received a high volume of emails from people expressing interest in this matter and concerns about the climate and culture in PAPR, SOTA and/or VCU generally. None of these emails provided specific information about incidents involving you. In response to any emails making general reference to other incidents or related behaviors, EAS and SOTA invited the senders to provide additional information. No such additional information was received.

Similarly, there was no evidence that you treated other individuals who are not African-American or who are not Black more favorably in similar situations.

Rather, the evidence provided by the Security Officer that you asked her to check on a student constitutes a nondiscriminatory, valid reason for his decision to initiate the check in light of the policy limiting room use to faculty and graduate students. Whether your initiation of the security check, absent evidence that it was discriminatory, was reasonable or warranted under the circumstances is outside EAS's scope to determine. Professor ███ also noted to the investigator that she has been mistaken for a student elsewhere based on her "youthful appearance".

Your initiation of the security check does not rise to the level of severe, pervasive, or persistent conduct, which must be present for a finding of discrimination to be made under VCU policy, which is based on the relevant legal standards. As an initial matter, the available evidence is that this was a solitary act and not part of a pervasive or persistent course of behavior. With respect to the circumstances, you approached the Security Officer assigned to the building, who already was nearby on the floor and asked her to respond. Professor ███ was asked to provide identification,

3

which she did, and the incident concluded. Therefore, the evidence demonstrates the reported conduct is not sufficiently severe to constitute a hostile environment under the Policy.

The lack of severity under the Policy is not to be confused with a lack of impact upon Professor ███. Professor ███ has explained the impact upon her sense of confidence and her unease about encountering you at work. More impact information furnished by the parties is included in Section II of the attached Findings of Fact.

In conclusion, for the reasons stated above, upon careful review of all available information and viewed in the light most favorable to Professor ███ I have determined that your action in initiating a security check, would not constitute a violation of the Preventing and Responding to Discrimination Policy. Accordingly, I have made the following recommendations to the Dean, as the responsible management official:

- Consult the Office of the Provost and other university offices as appropriate, to determine whether the Findings of Fact in this matter indicate a potential violation of other university policies or codes of conduct and also consider a broader assessment of concerns raised about the culture and climate within PAPR and the School.
- Notify EAS immediately should concerns of discrimination involving you be reported to the School during any assessment or at any time, so that EAS can reassess this incident and determine whether there is a basis for a discrimination investigation under the Policy.
- Monitor the situation for any potential retaliation and immediately report any such potential retaliation to EAS.

The Policy strictly prohibits retaliation for "protected activity", which includes reporting a concern of discrimination in good faith and participating in a process to address the concern such as the EAS inquiry in this matter. I ask that you immediately notify EAS and/or the Dean immediately if you believe you are experiencing retaliation.

At this time, unless additional information is received, the EAS inquiry with administrative review is now concluded and no further action will be taken through the EAS investigation and resolution process.

If you have any questions regarding this letter, please contact me at (804) 828-6404, or lrugless@vcu.edu.

Sincerely,


Laura Rugless
Executive Director of Equity and Access Services
& Title IX Coordinator

Encl: as

C:    Shawn Brixey, Dean, School of the Arts
       Gypsy Denzine, Ph.D., Senior Vice Provost for Faculty Affairs, Office of the Provost
       Aashir Nasim, Ph.D., Vice President for Inclusive Excellence, Professor and Director, VCU iCubed

4