IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JAVIER TAPIA,

                Plaintiff,

v.

MICHAEL RAO,
President of Virginia Commonwealth
University, in His Official Capacity;
NOAH SIMBLIST, in His Official and Individual
Capacity; and SHAWN BRIXEY, in His Official
and Individual Capacity,

                Defendants.

Civil Action No. 3:18-cv-899

## MICHAEL RAO, NOAH SIMBLIST and SHAWN BRIXEY'S  RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

MICHAEL RAO ("Rao"), President of Virginia Commonwealth University, in his official capacity, NOAH SIMBLIST ("Simblist"), in his official and individual capacity, and SHAWN BRIXEY ("Brixey"), in his official and individual capacity (collectively, "VCU Defendants"), oppose to the Motion for Partial Summary Judgment filed on behalf of Javier Tapia ("Plaintiff" or "Tapia"), and in support thereof state the following:

I.      FACTS OMITTED IN LISTING OF UNDISPUTED FACTS

Several material facts were omitted from the Motion for Partial Summary Judgment that are relevant to that request for relief.  Those facts, which are also undisputed, are as follows:

1.      The administrate leave or "ban," as that term is referred to in the Complaint, has

been lifted.[1]

2.      Tapia, an Associate Professor for the VCU School of Arts, Painting and Printmaking department ("PAPR") has been fully restored all "the rights and privileges of a tenured professor at VCU." [2]

3.      Tapia is listed on the current roster to teach at the PAPR when classes at VCU resume in Fall 2019.[3]

4.      Tapia is not aware of any fact that would show that Simblist, Rao or Brixey are currently violating his rights or are about to do anything that would violate his rights.[4]

5.      Tapia confirmed to Equity and Access Services ("EAS") during its Inquiry that he had "been pilloried on social media, received threatening emails, lost both of my graduate student TAs, and seen attendance in my classes drop by 60 percent."[5]

6.      In the letter sent to Tapia dated November 16, 2018, EAS recommended that Brixey consult the Office of the Provost and other university offices "to determine whether the Findings of Fact in this matter indicate a potential violation of other university policies or codes of conduct."[6]

7.      On the evening of November 19, 2018, Brixey notified Tapia by letter that he was placing Tapia on paid, non-punitive leave.  That letter, *inter alia,* invites Tapia to contact Brixey if Tapia had any questions about the leave.[7]

8.      On the following day, Tapia, through his attorney Schulte, reached out by phone to

---

[1] Tapia Deposition II, pages 7-8.
[2] Tapia Deposition II, page 8.
[3] Tapia Deposition, page 139.
[4] Tapia Deposition, page 249-51.
[5] See Written Statement submitted by Tapia to EAS, attached as Exhibit 1.
[6] See Letter from EAS to Tapia, dated Nov. 16, 2018, attached to the Complaint as Exhibit 2.
[7] Brixey Declaration, at Exhibit A (Letter of November 19, 2018).

VCU counsel Jacob Belue ("Belue"), who was also present for the November 16, 2018 meeting at EAS.  When Belue responded to that call, Schulte asked for a "clarification" of the administrative leave letter and said, among other things, the letter appeared to restrict Tapia from all contact with anyone affiliated with VCU.  According to the undisputed declaration of Belue, among other things, "Schulte suggested that, for example, it would prohibit Tapia from having Thanksgiving dinner later that week with his VCU colleagues."[8]

9.      Schulte's reference to Thanksgiving was posed as an example of how he was interpreting the terms of the administrative leave and not a request for a specific or one-time exception.

10.     In response to Schulte's request for a clarification, Belue stated that the administrative leave restriction only related to work-related contact with VCU faculty, staff or students and the leave did not prohibit social interactions or having non-work related contact with anyone affiliated with VCU.[9]

11.     During that call, Belue also explained the need and basis for this leave, reminding Schulte that EAS had concluded that Tapia had provided information to EAS that was at best not credible and that his failure to know the identity of someone in his own department or introduce himself to Cherry on October 25, 2018 instead of initiating a security check had caused a significant disruption in the PAPR.  Belue also confirmed that other individuals were coming forward with additional incidents or claims of bias or discrimination involving Tapia.  Belue told Schulte that it was for all of these reasons, which VCU had an obligation to review, and because VCU had an interest in defusing an escalating situation and keeping Tapia and VCU from

---

[8] Belue's Declaration, at Exhibit A (Emails dated November 20, 2018).
[9] *Id.*

experiencing further disruption, that Tapia had been placed on the administrative leave.[10]

12.     Schulte accepted this clarification but said he would need some form of written confirmation.  Belue said he would speak with Brixey and get back to Schulte shortly.[11]

13.     Schulte thereafter confirmed, via email dated November 20, 2018 at 3:30 p.m., that he needed written confirmation of the clarification and threatened to file a Motion for a Restraining Order if he did not get this confirmation within the hour.[12]

14.     At 3:42 p.m., after speaking with Brixey, Belue provided written confirmation of his discussions with Schulte, confirming that he had spoken with the Dean and that per their previous discussion, the letter should only be read to curtail work-related activity.  Belue wrote that he would be happy to discuss the matter further if Schulte still had any questions.[13]

15.     When Belue spoke with Brixey, Brixey confirmed that at all times, he intended and was of the understanding that the administrative leave was limited to "work-related" conduct and had nothing to do with First Amendment restrictions.[14]

16.     Tapia, through Schulte or directly, did not seek further clarification on the information that Belue had provided, nor did Tapia file a Motion for a Restraining Order following the expiration of the November 20, 2018, 4:30 p.m. deadline set forth in Schulte's email.  Schulte did, however, ask for and receive further guidance and/or clarifications on how Tapia should respond if a VCU student sends him an email or voicemail, which Belue promptly provided.[15]

17.     Over the next several weeks, Schulte called and emailed Belue asking how Tapia

---

[10] Belue Declaration, paragraph 5.
[11] Belue Declaration, paragraph 6.
[12] Belue Declaration, paragraph 7.
[13] Belue Declaration, paragraph 8.
[14] Brixey Deposition, page 33; Belue Deposition, page 46
[15] Belue Declaration, paragraph 9.

should respond to various issues or matters within the context of the administrative leave.  Each time Belue provided the guidance requested, which Schulte accepted without dispute or question.[16]

18.     Tapia filed his Complaint in this action on December 28, 2018, and, in response to the omission from the Complaint of any reference to the verbal and written clarifications made on November 20, 2018, Brixey sent Tapia a letter dated January 3, 2019, reminding Tapia that VCU had clarified that the terms of his administrative leave on November 20, 2018 were applicable only to work and work-related contact, explaining the reason Tapia had been placed on administrative leave, and again inviting Tapia to contact Brixey should Tapia have any questions or concerns about the scope of his administrative leave.[17]

19.     The restriction of "work-related activity" meant only those teaching, service or research activities that Tapia was paid to perform as a faculty member of the PAPR.[18] It does not include painting or otherwise acting as an artist independent of his professional teaching duties.[19]

20.     The purpose of the administrative leave was to address and review matters that had been brought to the attention of the VCU School of Arts,[20] which included Tapia's engaging in conduct that fell below what is expected of VCU faculty, approaching the situation on October 25, 2018 with unwarranted and disproportional suspicion, and providing false statements to the EAS during its Inquiry.[21]  This administrative leave was also implemented because "Javier's TAs were refusing to teach his classes, the likelihood of protests, sit-ins, massive disruption to both the students and Javier . . . and the need to bring stability to the – to the learning experience."[22]

---

[16] Belue Declaration, paragraph 10.
[17] Brixey Declaration, at Exhibit B (Letter dated January 3, 2019).
[18] Brixey Deposition, page 33-34; see Tapia's Faculty Individual Work Plan Template 2018-2019, attached as Exhibit 2; *see also* Simblist Deposition, pages 42-44.
[19] *Id.*
[20] Brixey Declaration, at Exhibit A (Letter of November 19, 2018).
[21] Brixey Declaration, at Exhibit C (Letter of February 15, 2019); Brixey Deposition, page 64.
[22] Brixey Deposition, page 36

21.     On February 15, 2019, Brixey sent Tapia a letter informing him that VCU had completed its review of the issues that triggered the need for the administrative leave and that, effective immediately, VCU was "lifting the administrative leave, including any ancillary restrictions related to your leave."  That letter states, among other things, that if Tapia wanted to respond to any point raised in the letter, he had ten days to schedule a meeting, send an email, or send any documentation that he wanted Brixey to consider, and that Brixey would consider any response Tapia provided in determining whether the letter should be revised.[23]

22.     Simblist played no role in the decision to place Tapia on administrative leave, nor was he involved in or consulted on the terms of that leave.[24]

23.     Tapia does not paint on VCU property – his studio is at his house.  Tapia did not consider the administrative leave to prohibit him from engaging in painting and did, in fact, work on two paintings while on leave.[25]

II.     DISCUSSION

The Motion for Partial Summary Judgment should be denied, for several reasons.  More specifically:

- The Motion for Partial Summary Judgment was filed after the deadline and is untimely;

- The relief requested in the Motion for Partial Summary Judgment is barred by the 11th Amendment;

- The relief Tapia requests in the Motion for Partial Summary Judgment was not included or requested in the Complaint; and

---

[23] Brixey Declaration, at paragraphs 6-7 and at Exhibit C (Letter of February 15, 2019).
[24] Brixey Declaration II, paragraph 3.
[25] Tapia Deposition, page 52.

- Brixey and Simblist are entitled to Qualified Immunity, which must be decided *prior* to any issues of liability.

These reasons are addressed separately in the following sections.

A.    TAPIA'S REQUEST FOR PARTIAL SUMMARY JUDGMENT IS UNTIMELY

The Scheduling Order entered on April 3, 2019 mandated that all motions for summary judgment were to be filed on or before June 14, 2019.  Tapia requested an extension of the discovery deadlines to accommodate the litigation schedule of his counsel and the VCU Defendants agreed to that request, so long as the deadline for the VCU Defendants to file its motion for summary judgment be likewise extended by one week and the Court approved of these changes. Tapia's proposed order, which was entered by this Court on May 29, 2019, extended the deadline for the VCU Defendants to file a motion for summary to June 19, 2019 – it did not extend or alter the deadline for Tapia to file a motion for summary judgment.[26]

Tapia failed to file his Motion for Partial Summary Judgment by June 14, 2019.  Tapia has not requested or established good cause to file this motion nearly a week after the deadline has passed and the Motion for Preliminary Injunction should be denied as untimely.

B.    TAPIA'S REQUEST FOR DECLARATORY RELIEF IS BARRED BY THE 11TH AMENDMENT.

The relief Tapia seeks in his Motion for Partial Summary Judgment is a declaratory judgment that would establish that Rao, Brixey and Simblist, in their official capacities, violated

---

[26] Tapia did not indicate or suggest that he would be filing a motion for partial summary judgment, the VCU Defendants only learned of such intention on the day the Motion for a Partial Summary Judgment was filed, on June 29, 2019, and at no time have the VCU Defendants discussed or bargained with Tapia about extending his deadline to file a motion for summary judgment, partial or otherwise. Also, the VCU Defendants, unlike Tapia, did not agree to a compressed response schedule but have nonetheless responded on an expedited basis.

Tapia's rights by imposing on him an unlawful "prior restraint," as alleged in Count I of the Complaint. This is evident because the *only* declaratory relief that Tapia has requested in the Complaint is against Rao, Brixey and Simblist in their *official capacities*.[27] As reflected in paragraph 82 of the Complaint, the only relief that Tapia seeks against them in their individual capacities is "money damages."[28] Further, the Motion for Partial Summary Judgment specifically and exclusively refers to an "unconstitutional prior restraint against Tapia, in violation of the First Amendment,"[29] the claim asserted in Count I. As such, the Motion for Partial Summary Judgment is limited to the official capacity claims set forth in Count I.

The official capacity claims Tapia asserts against Rao, Brixey and Simblist are barred by sovereign immunity under the Eleventh Amendment. *Armstrong v. James Madison Univ.*, No. 5:16-cv-00053, 2017 U.S. Dist. LEXIS 25014, at *12 (W.D. Va. Feb. 23, 2017). Tapia has conceded that Rao, Brixey, Simblist are employees and officers of VCU, and under well-settled law, VCU is an agency of the Commonwealth of Virginia, *see* Va. Code § 23.1-100 (identifying VCU as a "public institution of higher education"), and any claim brought against a state agency or state officials acting in their official capacities are considered as claims against the Commonwealth of Virginia itself. *See Herron v. Va. Commonwealth Univ.*, 366 F. Supp. 2d 355, 364 (E.D. Va. April 29, 2004) ("The [Eleventh Amendment] immunity also extends to [a VCU employee] in his official capacity because the claim against him is still considered an action against the state."); *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 475 (E.D. Va. January 12, 1999) ("[S]tate colleges and universities are agents of the state, and thus immune from suit under the

---

[27] Complaint, at paragraph 80 ("Tapia seeks declaratory and injunctive relief, temporary and permanent, against all Defendants sued in their official capacity (and thus, effectively, against VCU itself), requiring VCU to immediately lift the ban, fully restoring Tapia to all the rights and privileges of a tenured professor at VCU.")

[28] Complaint, at paragraph 82.

[29] Memorandum in Support of Motion for Partial Summary Judgment, page 1.

Eleventh Amendment.").  This immunity has neither been abrogated, nor waived, *see Gordon v. James Madison Univ.*, No. 5:12cv00124, 2013 U.S. Dist. LEXIS 73696, at *2 (W.D. Va. May 24, 2013), can be raised at any time, *see generally Herron*, 366 F. Supp. 2d at 362 (finding that §§ 1981 and 1983 claims against VCU and a VCU employee sued in his official capacity were barred by the Eleventh Amendment, and further acknowledging that "the defense of sovereign immunity can be raised at any time"), and Rao, Brixey and Simblist have each timely raised this defense in the Answer.

In addition to providing immunity against claims for monetary relief, Eleventh Amendment immunity affords full protection to states and state agencies from claims for **injunctive and declaratory relief.**  *McCray v. Md. DOT*, 741 F.3d 480, 483 (4th Cir. Md. January 30, 2014) (citing *Board of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363-64 (2001)); *Armstrong v. James Madison Univ.*, 2017 U.S. Dist. LEXIS 25014, at *12.  Officials sued in their official capacities are likewise protected by this immunity from suit, except that a court may issue prospective injunctive relief against officers sued in their official capacity where it is necessary to prevent ongoing violations of federal law.  *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. Va. September 18, 2013) (quoting *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. Va. July 27, 2010)).  This narrow exception to sovereign immunity, known as the *Ex parte Young*[30] exception, is limited to those instances where prospective declaratory or injunctive relief is necessary to stop an ongoing violation of federal law.  *Debauche v. Trani*, 191 F.3d 499, 505 (4th Cir. Va. September 15, 1999) (affirming the denial of declaratory and injunctive relief against state officers sued in their official capacities under *Ex parte Young*); *see Green v. Mansour*, 474 U.S. 64, 68 (1985) (observing that "compensatory or deterrence interests are insufficient to overcome the

---

[30] *Ex parte Young,* 209 U.S. 123 (1908).

dictates of the Eleventh Amendment").

As the Fourth Circuit stated in *Debauche v. Trani,* a case (like here) brought against the president of VCU in his official capacity, "The *Ex parte Young* exception . . . applies only when there is an ongoing violation of federal law that can be cured by prospective relief. It does not apply when the alleged violation of federal law occurred entirely in the past." *DeBauche v. Trani*, 191 F.3d at 505.  Unsupported claims (or even fears) that a one-time past event might be repeated in the future, such as when the plaintiff in *DeBauche* claimed that she had previously and "will be excluded from future debates" by the president of VCU, do not fall within the *Ex parte Young* exception, because "[m]ere conjecture is insufficient to transform a one-time event into a continuing governmental practice or an ongoing violation." *DeBauche*, 191 F.3d at 505.  And as the claims asserted against that VCU president in his official capacity in that case did "not fall within the *Ex parte Young* exception," the Fourth Circuit found "no reason not to apply to traditional principles of Eleventh Amendment immunity to dismiss the claims against [the VCU president] in his official capacity." *Id.*

Here, it is undisputed that the temporary administrative leave issued on the evening of November 19, 2018 was lifted on February 15, 2019.  To be sure, the letter to Tapia dated February 15, 2019 states specifically and unequivocally that, "[W]e are lifting your administrative leave, including any ancillary restrictions related to your leave, such as access to campus resources."[31] Tapia has likewise conceded that the leave was lifted on February 15, 2019 and that he is now in the same position that he was prior to being placed on administrative leave on November 19, 2018. Tapia testified further that he is not aware of any current or ongoing violations of law and does not have any facts or even a belief that there will be any in the future.

---

[31] Brixey Declaration, at Exhibit C (Letter of February 15, 2019).

As in *DeBauche*, the allegations Tapia makes in the Complaint concern violations of federal law that allegedly occurred in the past and are subject to the immunities and protections of the Eleventh Amendment. Tapia does not claim that there is an ongoing violation in the Motion for Partial Summary Judgment, nor does he allege much less assert any facts to show that a violation will take place between now and the date of trial.  Rao, Brixey and Simblist are accordingly entitled to the protections of the Eleventh Amendment immunities, and the narrow exception established in *Ex parte Young* simply does not apply.

Also, as the administrative leave at issue has been lifted, the request for declarative relief on Count I is moot and this Court therefore does not have jurisdiction to consider it.  The doctrine of mootness constitutes a part of the constitutional limits of federal court jurisdiction. *Brooks v. Vassar*, 462 F.3d 341, 348 (4th Cir. 2006). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). When a case is moot, "the court's subject matter jurisdiction ceases to exist." *S.C. Coastal Conservation League v. United States Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. S.C. June 17, 2015); *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 749 (4th Cir. Md. December 6, 2018).  If developments occur during the course of a case which render the court unable to grant a party the relief requested, the claims must be dismissed as moot. *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 116 (4th Cir. W. Va. April 20, 2000); *McLean v. City of Alexandria*, 106 F. Supp. 3d 736, 738 (E.D. Va. May 5, 2015); see also *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-99 (3d Cir. Pa. February 16, 1996).

In short, the relief requested is barred by the 11th Amendment.  In addition, the claim for declaratory relief in Count I is moot and this Court does not have jurisdiction to consider it.  For both of these reasons, the Motion for Partial Summary Judgment should be denied.

C. THE JUDGMENT THAT TAPIA SEEKS IN THE MOTION FOR PARTIAL SUMMARY JUDGMENT HAS NOT BEEN IDENTIFIED OR REQUESTED IN THE COMPLAINT.

Tapia does not seek in the Motion for Partial Summary Judgment a judicial declaration that is requested in the Complaint. Rather, Tapia is seeking a declaration that the administrative leave as described and clarified by Belue on November 20, 2018 and again by Brixey on January 3, 2019 – one that was fully explained and limited to work-related conduct, to wit, conduct that related to his teaching duties – violated Tapia's first amendment rights. Stated another way, the so-called "ban" described in the Complaint, one that supposedly restricted Tapia from posting on Facebook comments about Trump, a recent statement by the Pope, or South American politics,[32] is not the "ban" about which Tapia now seeks a judicial declaration.[33]

Tapia clearly knew about the clarification he requested and received from VCU on November 20, 2018 when he was drafting the Complaint and chose to ignore it. Within days of filing the Complaint Tapia was reminded, via Brixey's letter dated January 3, 2019, of this clarification yet chose not to amend his Complaint or claim for relief. Tapia, as the master of his Complaint, was free to frame the issues as he saw fit. He chose to litigate and seek a declaration on a prior restraint that was not clarified, instead seeking a declaration about a prior restraint that that was so broad and sweeping it prevented him from communicating "any statement on any topic of public concern directed to any colleagues on the faculty, staff, students, or anyone else in the broadly defined 'VCU community.'"[34] He continued to maintain this position – that the terms of the administrative leave were never clarified or limited – throughout this case, as reflected in the

---

[32] Complaint, paragraph 36.
[33] Motion for Partial Summary Judgment, pages 2, 12-13.
[34] Complaint, paragraph 36; see also Complaint, paragraph 41 (asserting that the so-called ban prohibited "the virtually infinite array of other topics of public concern").

recent Motion for Preliminary Injunction, wherein Tapia did not acknowledge any communication on November 20, 2018 and asserted that the January 3, 2019 letter was not relevant to his "prior restraint" claim.[35]

In short, Tapia seeks in the Motion for Partial Summary Judgment a judicial declaration on a type of administrative leave that was *not* described in the Complaint, and as the time for amendment has long passed and discovery has closed, he is simply not entitled a judicial declaration he has not previously requested.  *See, for example, Nautilus Ins. Co. v. Winchester Homes*, No. 94-2516, No. 94-2601, 1995 U.S. App. LEXIS 13657, at *3 (4th Cir. Md. June 5, 1995) (affirming dismissal of request for declaratory relief that was not included in the complaint).

D.    BRIXEY AND TAPIA ARE ENTITLED TO QUALIFIED IMMUNITY.

While one might be inclined to ask whether the Motion for Partial Summary Judgment should be read more broadly, that Tapia is seeking not a judicial declaration but a ruling on a limited, discrete issue with the intention of narrowing the issues presented at trial, the Motion for Partial Summary Judgment precludes that interpretation.   The Motion for Partial Summary Judgment is quite clear on this point, with Tapia confirming expressly on page 3 that what he is seeking is "vindication" in the form of a judicial declaration on the "prior restraint" and that the motion was filed to obtain a "declaration that his constitutional rights were violated . . . vindicating his human dignity and reputation" and that this "declaratory relief will serve Tapia's private good and the nation's public good . . . ."

Even if Tapia recants and attempts in his Reply to change the basis for the pending motion – like he did in his Reply to the Motion for Preliminary Injunction – Tapia is nevertheless not

---

[35] Memorandum in Support of Motion for Preliminary Injunction, pages 23 and 25 (asserting, *inter alia,* the November 19, 2018 letter, without consideration of any clarification, is the basis for the First Amendment claim and that the January 3, 2019 letter "is of no legal consequence").

entitled to a ruling that Brixey or Simblist is liable to him as a matter of law on Count I. Brixey and Simblist have asserted that they are entitled to qualified immunity on Count I (as well as on Counts II and III) and despite Tapia's attempt to brush aside or leapfrog over this issue, suggesting that neither he nor the Court need be concerned with qualified immunity when reviewing issues of liability against a state actor,[36] a plaintiff cannot seek to establish liability without first showing that an asserted defense of qualified immunity does not apply.

Qualified immunity does not, contrary to Tapia's suggestion, merely protect a state officer from having to pay a monetary award. The doctrine of qualified immunity is much broader – it is an immunity from suit. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). As recognized by the Fourth Circuit, qualified immunity "spare[s] individual officials the burdens and uncertainties of standing trial." *Gooden v. Howard County,* 954 F.2d 960, 965 (4th Cir. Md. January 23, 1992) (*en banc*); *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. Va. April 29, 2015) ("The defense of qualified immunity is broader than a mere defense to liability"). Questions of qualified immunity are therefore to be decided "at the earliest possible stage in litigation." *Cloaninger v. McDevitt*, 555 F.3d 324, 330 (4th Cir. N.C. February 9, 2009) (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)); *see Raub v. Campbell,* 785 F.3d at 881; see also *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985) (plurality opinion) (qualified immunity is "effectively lost if a case is erroneously permitted to go to trial").

Where a defendant claims a qualified immunity defense – and Brixey and Simblist have done so here – it is not incumbent on the defendants to show that they are entitled to this defense. Rather, once the defense has been asserted the burden shifts to the plaintiff to prove that the state officials are not shielded by qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 199 (2001);

---

[36] See Memorandum in Support of Motion for a Partial Motion for Summary Judgment, page 3.

14

*Wootten v. Virginia*, No. 6:14-CV-00013, 2015 U.S. Dist. LEXIS 35949, at *36 n.6 (W.D. Va. March 23, 2015) ("An assertion of qualified immunity shifts the burden to a plaintiff to show that an official's conduct violated a constitutional right and that the constitutional right was clearly established at the time the allegedly unlawful conduct occurred."); *see Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (The plaintiff bears the burden of proving "that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct.") (citation omitted). By essentially ignoring his burden and failing to even attempt to show that Brixey and Simblist are not entitled to qualified immunity, Tapia cannot show that liability should attach to Brixey and Simblist or that Tapia is entitled to a summary judgment on this issue.

Although the defense of qualified immunity has loomed large in this litigation, as it does in any claim involving state actors, Tapia inexplicably does not address it in his Motion for Partial Summary Judgment. Still, and as expressed in the VCU Defendants' Motion for Summary Judgment, Brixey and Simblist are entitled to qualified immunity on the claims asserted in Count I, which the VCU Defendants incorporate herein by reference. In addition to those arguments and without agreeing to take on the burden that falls to the plaintiff when the defense of qualified immunity has been asserted, the VCU Defendants submit the following in support of their claim that qualified immunity not only precludes the Motion for Partial Summary Judgment but mandates that the claims in Count I, as far as they are asserted against Brixey and Simblist in their individual capacities, should be dismissed.

The Fourth Circuit has set forth the parameters of qualified immunity. "Generally, qualified immunity operates to protect . . . Government officials from civil damages liability for

alleged constitutional violations stemming from their discretionary functions."[37]  "The protection extends to all but the plainly incompetent or those who knowingly violate the law '"[38] "Indeed, as [the Fourth Circuit has] emphasized repeatedly, '[o]fficials are not liable for bad guesses and gray areas; they are liable for transgressing bright lines.'"[39]

A qualified immunity review generally involves a two-prong analysis.[40] First, a court must decide whether there has been a violation of the plaintiff's constitutional rights, which includes the identification of the specific right that the plaintiff asserts was infringed by the challenged conduct at a high level of particularity. *Saucier v. Katz,* 533 U.S. at 200; *Edwards v. City of Goldsboro*, 178 F.3d 231, 250-51 (4th Cir. N.C. May 14, 1999) ("In analyzing the applicability of a qualified immunity defense, we must first identify the specific right that the plaintiff asserts was infringed by the challenged conduct at a high level of particularity") (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).  Second, a Court examines whether that violation of right was "clearly established."  A right is "clearly established" when "its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Owens v. Lott,* 372 F.3d 267, 279 (4th Cir. S.C. June 15, 2004 ) (*quoting Anderson v. Creighton, 483 U.S. at 640); Hensley v. Price*, 876 F.3d 573, 580 (4th Cir. N.C. November 17, 2017).  In determining whether a right was clearly established at the time of the claimed violation, "courts in this circuit need not look beyond the decisions of the Supreme Court, this court of appeals, and the highest court of the state in which the case arose . . ." *Jean v. Collins*, 155 F.3d 701, 709 (4th Cir. N.C. September 17,

---

[37] *Raub v. Campbell*, 785 F.3d 876, 880-81 (4th Cir. 2015) (*citing Anderson v. Creighton*, 483 U.S. at 638.
[38] *Raub v. Campbell*, 785 F.3d at 881 (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).
[39] *Raub v. Campbell,* 785 F.3d at 881 (*citing S.P. v. City of Takoma Park,* 134 F. 3d 260, 266 (4th Cir. Md. January 15, 1988).
[40] A court may choose which of these two prongs to analyze first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

1998) (*en banc*). "If a right is recognized in some other circuit, but not in this one, an official will ordinarily retain the immunity defense." *Id.* Finally, in the context of First Amendment cases, the Fourth Circuit warns that "only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected, because the relevant inquiry requires a 'particularized balancing' that is subtle, difficult to apply, and not yet well-defined." *DiMeglio v. Haines,* 45 F.3d 790, 806 (4th Cir. 1995); *accord Pike v. Osborne,* 301 F.3d 182, 185 (4th Cir. Va. July 29, 2002).

A plaintiff seeking to hold a state officer liable in his individual capacity must also show that the official charged "acted personally in the deprivation of the plaintiff's rights . . . the application of *respondeat superior* has no application under [§ 1983]." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. Va. January 7, 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. January 6, 1977)); *Rowe v. Clarke*, Civil Action No. 3:18-cv-780, 2019 U.S. Dist. LEXIS 99866, at *6-7 (E.D. Va. June 13, 2019). In addition, where a plaintiff is alleging a deprivation of First Amendment rights, "the defendant's motive is relevant, and [the] plaintiff's burden of proof is similar to that set out in cases where an employer's adverse employment action is alleged to be due to plaintiff's First Amendment activities." *Sloman v. Tadlock*, 21 F.3d 1462, 1469 n.10 (9th Cir. Cal. April 14, 1994) (citing, *inter alia, McKinley v. Eloy*, 705 F.2d 1110 (9th Cir. Ariz. May 9, 1983)); *see Henderson v. Virginia*, Civil Action No. 7:06cv00408, 2007 U.S. Dist. LEXIS 70207, at *14 (W.D. Va. Sep. 21, 2007) ("only intentional conduct is actionable under the Free Exercise Clause). This is true even when the claim is that "[the defendant] used his official powers . . . to deter [the plaintiff's] exercise of [First Amendment] rights in the future" – where the claim is of prior restraint. *Sloman v. Tadlock*, 21 F.3d at 1469; *see Madison Joint School Dist., v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 177, (1976) (conduct "designed to

govern speech and conduct in the future" as "the essence of prior restraint"). Thus, in any Section 1983 First Amendment case, a plaintiff must allege and prove not only that "[the defendant] deterred or chilled [the plaintiff's] political speech," but also that "such deterrence was a substantial or motivating factor in [the defendant's] conduct[.]." *Id; see Mendocino Env. Ctr. v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. 1994) ("The defendant's intent is an element of the [First Amendment] claim.") (emphasis in original); *see also Adkins v. Suba*, No. 1:09-cv-00029, 2011 U.S. Dist. LEXIS 107196, at *18-19 (D. Guam Sep. 22, 2011).

Citizens do not relinquish all of their First Amendment rights when they accept public employment. *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. Va. June 23, 2000) (*en banc*) (*citing United States v. National Treasury Employees Union*, 513 U.S. 454, 465 (1995) (hereinafter, "*NTEU*"); *Connick v. Myers*, 461 U.S. 138, 142 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968)).  At the same time, the Supreme Court has recognized that public employers, in their capacity as employers, have legitimate interests in regulating the speech of their employees. *See Connick*, 461 U.S. at 142 (noting that the State has an interest "in promoting the efficiency of the public services it performs through its employees" (quoting *Pickering*, 391 U.S. at 568)).  To distinguish between protected and non-protected speech by public employees, the Supreme Court established the "*Pickering* balancing test."  The threshold question in this test is whether the restriction precludes statements made by a private citizen on "matters of public concern" rather than "*as an employee* upon matters only of personal interest." *NTEU*, 513 U.S. at 466 (quoting *Connick*, 461 U.S. at 147) (emphasis in *NTEU*)." If a public employee's speech made in his capacity as a private citizen does not touch upon a matter of public concern, the state, as employer, may regulate it without infringing any First Amendment protection." *Urofsky*, 216 F.3d at 406, and the inquiry ends, *see Edwards*, 178 F.3d

at 246. If the speech is made in an employee's capacity as a citizen and involves matters of public concern, then the inquiry proceeds to the second step: balancing the public employee's interests as a member of the general public in speaking freely about matters of public concern, and the interests of the public employer in promoting the efficiency of its public services by regulating its employees' speech. *See NTEU*, 513 U.S. at 465-69; *Pickering*, 391 U.S. at 568.  As the Supreme Court explained in *Garcetti,* "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." 126 S. Ct. at 1958. It is only when employees are "speaking as citizens about matters of public concern" that public employers are limited under First Amendment jurisprudence to those speech restrictions that are necessary for the employer to operate efficiently and effectively. *See id.*  This is consistent with how the Fourth Circuit framed the issue in *Urofsky*, that this issue turns on whether the restriction goes primarily to the employee's role as a citizen or primarily in his role as employee. *Urofsky*, 216 F.3d at 407.

The restriction at issue here was directed to Tapia's role as an employee.  The restrictions of the administrative leave were limited to "work-related" conduct only, which meant that Tapia was not allowed to show up at VCU and teach his classes or engage in the service or research activities for which he was paid as a faculty member of the PAPR.[41]  Tapia at all times knew or

---

[41] Although Tapia has recently started referring to the restrictions included in the administrative leave as a "heckler's veto," this term is misplaced.  A "heckler's veto" is a content-based restriction enacted to silence a particular viewpoint that the government believes to be demonstrably offensive to some elements of the public.  *Draego v. City of Charlottesville*, No. 3:16-CV-00057, 2016 U.S. Dist. LEXIS 159910, at *52-53 (W.D. Va. Nov. 18, 2016) (defining "heckler's veto" as where "speech assuredly or demonstrably offensive to some elements of the public" is silenced to avoid disruptions) (citing *Berger v. Battaglia*, 779 F.2d 992, 1001 (4th Cir. Md. December 20, 1985)).  The restrictions placed on Tapia were content neutral – that he cannot engage in work-related conduct, regardless of whether that conduct could be considered by the public as positive, negative, offensive, or neutral.  This term, and any heightened scrutiny that might attach to this particular type of restriction, simply does not apply here.

should have known what VCU meant by "work-related" conduct, as the duties of teaching, research and service as they relate to Tapia's job duties are set forth in Tapia's Faculty Individual Work Plan Template.[42]  It did not include creating art at his studio or prohibit Tapia from meeting with VCU colleagues or VCU students, so long as it was conduct that was not "work-related," nor did it prohibit Tapia from discussing any topic with anyone not affiliated with VCU, including issues related to VCU, the EAS Inquiry results, or his employment.

Moreover, the terms of the administrative leave did not prohibit Tapia from discussing matters of public concern.  The January 3, 2019 letter states this expressly, and this was also confirmed on November 20, 2018 in response to Schulte's request for a clarification on the terms of the administrative leave letter.  More specifically, in response to Schulte's claim that the administrative leave letter was an "unlawful prior restraint" because it appeared to direct Tapia to refrain from any and all types of contact with anyone affiliated with VCU, Belue responded to Schulte, a civil rights attorney who is well-versed in, among other things, the terminology associated with First Amendment law, that the administrative leave letter should not be read as a, *inter alia,* "prior restraint on any free speech."  By using these specific, terms of art, Belue was confirming, from one lawyer to another, in unambiguous terms that the restrictions of the administrative leave did not prohibit Tapia from speaking on matters of public concern in his private capacity.  This is consistent with the other statements of clarification that were provided to Schulte, which are not disputed, and establish that the restrictions set forth during the temporary, administrative leave did not constitute an unconstitutional restriction on Tapia's First Amendment rights.

---

[42] *See* Exhibit 2.

Nor can Tapia establish under the second prong of the qualified immunity analysis that Brixey knew that, based on the recommendations made by the EAS and under the circumstances that existed in the VCU School of Arts and the PAPR in November 2018, he was violating Tapia's First Amendment rights.   Neither the United States Supreme Court nor the Fourth Circuit has previously addressed a case like this, such that Brixey, the Dean of the VCU School of Arts, would know that he was violating some clearly established constitutional rights.   Rather, Brixey was faced with an employee that was being attacked and boycotted by students, whose TA's had turned against him and were refusing to assist him teach his classes, and whose mere presence was causing a threat to the educational mission and goal of the PAPR.   Moreover, Brixey had also received and reviewed the results and recommendations of the EAS Inquiry, which suggested that Tapia had not been truthful during its investigation, instructed security to check on the identity of a member of his own department, and concluded that the mere presence of Adjunct Professor Caitlin Cherry in Room 313, the designated, secure workspace for adjunct professors, unreasonably conjured images of "Robert DeNiro and pipe bombs."   If a college has a legitimate interest in preventing disruption on campus, Brixey surely had a legitimate interest in stopping or at least defusing the uproar and protests that were surrounding Tapia.   *See Healy v. James*, 408 U.S. 169, 184 (1972). Considering all of these facts and circumstances, it was reasonable and appropriate to place Tapia on paid, administrative leave and instruct that he not engage in any work-related conduct while on this leave.   Further, Brixey instructed that to the extent Tapia wanted to come onto campus he should first get permission from Brixey to do so – which under the circumstances was reasonable and necessary to avoid further disruptions to the University, and that if Tapia had any questions about the leave, all he need to contact him.   Moreover, each time a question or concern was raised by Tapia, it was promptly addressed to Tapia's apparent satisfaction.

Finally, it is undisputed that at no time did Brixey ever think or consider that he was violating Tapia's First Amendment rights.[43]

Based on these facts, none of which are disputed, it cannot be said that Brixey knowingly and intentionally violated Tapia's rights when he placed him on administrative leave.  At the very most, this is one of the "gray areas" where Brixey, as a state actor, is entitled to the protections of qualified immunity and should not be forced to defend against the claims assert in Count I at trial.  Moreover, Tapia does not assert that Simblist had any role or connection with the decision to issue the administrative leave or define what restrictions would be included in that leave.  As there is no allegation that Simblist had any personal role in the issuance of the administrative leave, he is entitled to qualified immunity and Tapia is not entitled to any relief against Simblist in his individual capacity under Count I.  For these reasons, the Motion for Partial Summary Judgment should be denied.  Instead, this Court should grant the VCU Defendants' motion for summary judgment on this point and dismiss the claims asserted against Brixey (and Simblist) in their individual capacities.

III.   CONCLUSION

As expressed above, Tapia's Motion for Partial Summary Judgment fails for several reasons.  First, it is untimely.  Second, the request for declaratory relief is barred by the 11th Amendment and does not fall under the exception of *Ex parte Young*.  Third, he has not included in the Complaint the relief he seeks herein.  And fourth, although Tapia does not seek partial summary judgment on a narrow, limited issue, Brixey and Simblist are nevertheless entitled to qualified immunity on Count I.  For the reasons expressed herein, as well as in the VCU Defendants' Motion for Summary Judgment as it relates to Count I, Tapia's Motion for Partial

---

[43] Brixey Deposition, page 33; Belue Deposition, page 46.

Summary Judgment is without merit and should be denied.


Dated:  June 28, 2019                    MICHAEL RAO, NOAH SIMBLIST
                                         and SHAWN BRIXEY

                                         _____/s/_____
                                         Kevin D. Holden (VSB No. 30840)
                                         Lindsey A. Strachan (VSB No. 84506)
                                         David E. Nagle (VSB No. 20571)
                                         Jackson Lewis P.C.
                                         701 E. Byrd St., Richmond, VA 23219
                                         P.O. Box 85068, Richmond, VA 23285
                                         Tel: (804) 649-0404
                                         Fax: (804) 649-0403
                                         kevin.holden@jacksonlewis.com
                                         lindsey.strachan@jacksonlewis.com
                                         david.nagle@jacksonlewis.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 28, 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system which will then send a notification of such filing (NEF) to the following:

Blackwell N. Shelley, Jr. (VSB# 28142)
Tim Schulte (VSB #41881)
Shelley Cupp Schulte, P.C.
2020 Monument Avenue, 1st Flr.
Richmond, VA 23220
Tel: (804) 644-9700
Fax: (804) 278-9634
shelley@scs-work.com
schulte@scs-work.com

Rodney A. Smolla (VSB# 32768)
4601 Concord Pike
Wilmington, Delaware 19803
(864) 373-3882
(804) 278-9634
rodsmolla@gmail.com

Timothy E. Cupp (VSB No. 23017)
Shelley Cupp Schulte, P.C.
1951 Evelyn Byrd Avenue, Suite D
P.O. Box 589
Harrisonburg, VA 22803
Tel: (540) 432-9988
Fax: (804) 278-9634
cupp@scs-work.com

                              /s/
Kevin D. Holden (VSB No. 30840)
Lindsey A. Strachan (VSB No. 84506)
David E. Nagle (VSB No. 20571)
Jackson Lewis P.C.
701 E. Byrd St., Richmond, VA 23219
P.O. Box 85068, Richmond, VA 23285
Tel: (804) 649-0404
Fax: (804) 649-0403
kevin.holden@jacksonlewis.com
lindsey.strachan@jacksonlewis.com
david.nagle@jacksonlewis.com
*Counsel for Defendants*